The School District of Pittsburgh et al., Appellants *v.* Robert and Alexis Rankin, Minors, by Amanda Rankin, their mother et al., Appellees.

Robert and Alexis Rankin, Minors, by Amanda Rankin, their mother et al., Appellants *v.* The School District of Pittsburgh et al., Appellees.

Argued October 31, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, DiSalle and Craig. Judges Blatt and MacPhail did not participate.

*Persifor S. Oliver, Jr.,* Assistant Solicitor, with him *Robert J. Stefanko,* Solicitor, for School District of Pittsburgh.

*Conrad A. Johnson,* for Robert and Alexis Rankin, minors, by Amanda Rankin, their mother et al.

Opinion by Judge Wilkinson, Jr., December 13, 1978:

The appellants (hereinafter collectively referred to as the School District) seek review of two orders of the Court of Common Pleas of Allegheny County in an equity action brought by appellees, parents of students assigned to the newly established Baxter Mid-

dle Grade Center (Baxter).[1] We affirm the decree of the chancellor, with the modification set forth below.

Since the factual background and prior history of this case have been fully set forth in our opinion in *Rankin v. School District of Pittsburgh*, 33 Pa. Commonwealth Ct. 129, 381 A.2d 195 (1977), we need not repeat it in detail here. Briefly, the appeal stems from a decision by the School District in 1975 to convert Baxter Elementary School into a middle grade center as part of a district-wide change in the grade pattern in the district. Appellees objected to the opening of Baxter as a middle grade center on the ground that the District's assignment of students who had previously attended predominantly black elementary schools would create a new segregated school in the District. The chancellor found establishing Baxter as a middle grade center with an enrollment of 99 per cent black students constituted a violation of an order of the Pennsylvania Human Relations Commission (Commission)[2] and the guarantees of the

---

[1] The appellees have filed a motion to quash the appeals of the School District arguing in substance that the order is interlocutory, that the School District has failed to comply with Pa. R.C.P. Nos. 1518 and 1519, and that the appeals are frivolous. We herewith deny the motion to quash on the grounds that in view of our order in *Rankin, supra,* the May 19, 1978 order constituted a final order in directing Baxter be closed as a middle grade center and that Pa. R.C.P. Nos. 1518 and 1519 are inapplicable to that order and finally in view of the modification the appeals are not frivolous.

Appellees filed a cautionary appeal at 1441 C.D. 1978 from the May 19, 1978 decree indicating they were preserving their rights so that "issues that they believe were incorrectly decided below may be presented and argued to this Court." Although discussed in their brief and mentioned at oral argument, we do not consider that it is being seriously pressed at this time. In any event, we do not perceive that it has any merit.

[2] The Commission's amended order, dated September 25, 1972, specifically ordered the School District not to open any new schools without a racially balanced student enrollment, as defined by the guidelines established by the Commission.

Fourteenth Amendment of the United States Constitution. In *Rankin, supra,* this Court reviewed the decree of the chancellor and concluded, *inter alia,* that the trial court acted within the scope of its equity powers in ordering Baxter closed as a middle grade center, but that the court exceeded its equity power in that portion of its decree which ordered the School District to build a new middle grade center. On remand the chancellor opened the record to receive stipulations regarding school records of enrollments, racial balance and school capacity. After the School District declined to submit a planned reassignment of students presently attending Baxter Middle Grade Center, the chancellor on March 16, 1978 issued an order directing Baxter be closed as a middle grade center and ordering the students reassigned to five specific elementary schools. Upon a reconsideration petition filed by appellees, the chancellor filed a new decree on May 19, 1978 which again ordered Baxter closed but which ordered the School District to devise a reassignment plan to comply with the guidelines and order of the Commission. On June 29, 1978 the School District submitted a reassignment plan to the chancellor which provided for the voluntary enrollment of Baxter students at designated elementary schools. Objections to the plan were raised by appellees, the Commission and a group of parents of students assigned to nearby Reizenstein Middle School (both granted amicus status by the chancellor). On August 3, 1978 the chancellor filed a third decree, amended August 4, 1978, approving the school district proposal as an interim plan for the coming school year, and ordering the School District to devise a final plan by November 1, 1978. The chancellor further ordered the School District to "cooperate" with committees of parents from both schools and the Commission in devising the plan. The School District has appealed the May 19,

1978 decree at 1318 C.D. 1978 and the August 3, 1978 decree, as amended, by the August 4, 1978 decree at 2011 C.D. 1978.

The School District first argues that there was no basis for the chancellor to take remedial action because by converting Baxter into a middle grade center students were merely transferred from one segregated school to another, and thus, the School District action created no "incremental segregative effect." The School District further argues that the Supreme Court of the United States has limited the power of a court of equity in school desegregation cases only to situations where School District action in fact causes an "incremental segregative effect." *See Dayton Board of Education v. Brinkman,* 433 U.S. 406 (1977). Such reliance on *Dayton, supra,* is misplaced. *Dayton* limited the equity powers of federal district courts in fashioning remedies for segregation caused by admittedly neutral school board decisions which did not cure the prior violation of federal constitutional rights. Neither the *Dayton* decision nor the language therein can at this late date breathe new life into the School District's old argument that it has done no harm because it has not increased segregation in the Pittsburgh schools. To make clear what was stated in our prior decision in *Rankin, supra,* the violation of the Commission's order was the specific illegal conduct which justified the chancellor's remedial action. The order as well as the guidelines of the Commission were in turn directed to the affirmative legislative policy of the Commonwealth evidenced by Section 7 of the Pennsylvania Human Relations Act[3] that its school systems be desegregated. *See Pennsylvania Human Relations Commission v. Norristown Area School District,* 20 Pa. Commonwealth Ct. 555,

---

[3] Act of October 27, 1955, P.L. 755, *as amended,* 43 P.S. §957.

342 A.2d 464, *aff'd*, 473 Pa. 334, 374 A.2d 671 (1977); *Pennsylvania Human Relations Commission v. School District of Philadelphia*, 23 Pa. Commonwealth Ct. 312, 352 A.2d 200 (1976).

Having so concluded, however, we must agree with the School District that the chancellor exceeded his powers in ordering the School District to "cooperate" with a committee selected by appellees, parents of Reizenstein Middle School and the Commission. As this Court noted in *Rankin, supra,* the inherent discretionary power of school boards regarding the assignment of students[4] is properly limited only by orders of the Commission. *See Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 313 A.2d 156 (1973); *Zebra v. Pittsburgh School District,* 449 Pa. 432, 296 A.2d 748 (1972).

Accordingly, we will enter the following

ORDER

AND Now, December 13, 1978, the order of the Court of Common Pleas of Allegheny County at No. G.D. 75-19178 in Equity, dated May 19, 1978, as amended by the order dated August 3, 1978, as further amended by the order of August 4, 1978, is hereby affirmed with the modification that there be and is hereby deleted therefrom the direction that the School District "cooperate" with a committee selected by appellees, parents of Reizenstein Middle School and the Commission.

CONCURRING AND DISSENTING OPINION BY JUDGE CRAIG:

I concur with the order of the majority of the court and the able opinion of Judge WILKINSON in

---

[4] *See* Section 310 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1310.

support of that order, with the exception of that lesser aspect of the decision which deletes from the lower court's order the direction concerning cooperation, as to which I respectfully dissent.

With the following emphasis being my own, I point out that the questioned portion of Judge FLAHERTY's amending order of August 3, 1978, dealing with submission of a comprehensive plan, actually states that:

> [T]he *plaintiffs* shall select a committee which shall cooperate with the School District of the City of Pittsburgh in the formulation of the said plan along with amicus curiae in the case.

I note that the quoted language imposes a mandate upon the plaintiffs rather than upon the school district. Although there may be a technical question concerning the directing of a mandate to the plaintiffs who instituted the proceeding, it would seem that the absence of objection by those plaintiffs clears up the technicality.

Thus viewed, the quoted wording cannot, and should not, be interpreted as requiring the School District to subject its proposed plan to veto by either a committee of plaintiffs or amicus curiae.

A fair interpretation of this language is that it is a direction to plaintiffs that they organize themselves to remain in cooperative communication with the school district during formulation of the plan, not to supervise the school district, but so that the school district may afford to itself the benefit of input from an identifiable representation of those who have established standing in the case.

Because one of the problems in the history of this matter appears to be difficulty of communication, I would permit the questioned portion of the order to stand.